# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

BRANDON JOHNSON # 485161,      )

            )

    Plaintiff,           )

            )

v.           )     No. 3:26-cv-00138

            )

TENNESSEE DEPARTMENT OF     )

CORRECTION, *et al.*,        )

            )

    Defendants.        )

## MEMORANDUM OPINION AND ORDER

Brandon Johnson, an inmate of the South Central Correctional Facility in Clifton, Tennessee, filed a pro se, in forma pauperis Amended Complaint pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights. (Doc. Nos. 10, 12). He has now filed a Motion for Temporary Restraining Order ("TRO") (Doc. No. 16) and Motion for Preliminary Injunction. (Doc. No. 17). Unlike Plaintiff's previous attempts at obtaining emergency relief (see Doc. Nos. 10, 15), these motions are procedurally compliant, and the Court will start there.

## I. MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

In his third Motion for TRO (Doc. No. 16), Plaintiff asks the Court for:

1. Immediate cessation of retaliation
2. Immediate restoration of law-library access
3. Immediate protection from Officer Tarnowski
4. Immediate cessation of legal-mail interference
5. Immediate protection of Plaintiff's ability to prepare filings

(Id. at 1). In his third Motion for Preliminary Injunction, Plaintiffs seeks similar relief: to stop retaliation, restore legal access, obtain safety protections (which Plaintiff defines as "prohibit[ing] Officer Tarnowski and any other staff involved in retaliatory conduct from having direct contact

1

with Plaintiff and ensur[ing] Plaintiff is not subjected to unsafe or hostile conditions created by staff"), ensure access to evidence he needs to prepare for an upcoming hearing in state court, and to require Defendants "to comply with all constitutional and statutory obligations regarding access to courts, safety, and due process." (Doc. No. 17 at 1-2).

When determining whether to issue a temporary restraining order, or a preliminary injunction, the Court considers four factors: a strong likelihood of success on the merits; irreparable harm in the absence of the requested relief; the balance of equities favors them; and that public interest favors the requested relief. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Sisters for Life, Inc. v. Louisville-Jefferson Cnty., 56 F.4th 400, 403 (6th Cir. 2022). The Court finds it appropriate to consider Plaintiff's request for a TRO and preliminary injunction simultaneously since the same four factors apply.

Although "[t]he standard for issuing a [TRO] is logically the same as for a preliminary injunction," the "emphasis [is] on irreparable harm given that the purpose of a [TRO] is to maintain the status quo." ABX Air, Inc. v. Int'l Bhd. of Teamsters, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016). Both TROs and preliminary injunctions "are extraordinary remedies which should be granted only if the movant carries [its] burden of proving that the circumstances clearly demand it." Barron v. PGA Tour, Inc., 670 F. Supp. 2d 674, 682 (W.D. Tenn. 2009) (citation omitted).

Plaintiff's TRO and preliminary injunction motions focus on four Section 1983 claims asserted in his Amended Complaint: retaliation, access to court, and due process claims as well as claims of "Eighth Amendment Safety Violations." (Doc. No. 16-2 at 4).

A. RETALIATION CLAIMS

A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. Thaddeus-X v. Blatter, 175 F.3d 378, 388 (6th Cir.

2

1999). To establish a prima facie case of retaliation within the context of Section 1983, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct. Id. at 394-99. The plaintiff has the burden of proof on all three elements. Murray v. Unknown Evert, 84 F. App'x 553, 556 (6th Cir. 2003).

Plaintiff alleges that he engaged in protected conduct by filing grievances, filing the instant lawsuit, filing a Department of Justice complaint, and preparing filings for his April 30 state court hearing. These acts are clearly protected conduct. See Herron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000) (filing grievances through an inmate grievance process is protected conduct); McClure v. Johnson, No. 1:15-cv-00035, 2019 WL 13444614, at *17 (M.D. Tenn. July 24, 2019) (filing a federal lawsuit constitutes protected conduct). Plaintiff alleges he was retaliated against for engaging in protected contact by way of a "False Facebook accusation on February 16, 2026" (but does not identify who initiated the Facebook post); an "[a]ttempted provocation by Officer Tarnowski on the same day"; denial of law library access on February 27, 2026 (but does not identify who denied Plaintiff access); interference with legal mail (but does not identify who interfered and when); and "[e]scalating hostility after DOJ acknowledgement" (but does not identify by whom and when, specifically). (Doc. No. 16-2 at 2-3). Notwithstanding the allegation against Officer Tarnowski, these allegations do not provide enough information for the Court to determine which Defendant or Defendants, if any, engaged in the alleged retaliatory actions. And while retaliatory motive can be supported by circumstantial evidence including "the temporal proximity between the prisoner's protected conduct and the official's adverse action", Hill v. Lappin, 630 F.3d 468, 475-76 (6th Cir. 2010) (citing Holzemer v. City of Memphis, 621 F.3d 512,

3

525-26, (6th Cir. 2010)), Plaintiff does not provide the dates on which some of these actions allegedly occurred. General unsupported allegations do not justify the extraordinary remedy of a TRO or preliminary injunction. See, e.g., Cameron v. Bouchard, 815 F. App'x 978, 986 (6th Cir. 2020); Libertarian Party of Ohio v. Husted, 751 F.3d 403, 417 (6th Cir. 2014); McNeilly v. Land, 684 F.3d 611, 614 (6th Cir. 2012). Plaintiff also fails to allege any facts establishing a causal link between his protected First Amendment activity and the generalized acts he seeks to enjoin.

With respect to Plaintiff's allegation regarding Officer Tarnowski (the only allegation that provides both a date and a Defendant), "[C]ertain threats or deprivations are so de minimus that they do not rise to the level of being constitutional violations." Thaddeus-X, 175 F.3d at 398. In the absence of a description of Officer Tarnowski's attempted provocation, the Court cannot conclude that such attempt would deter a person of ordinary firmness from exercising his First Amendment rights. See Hardy v. Adams, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) (holding that alleged threat the corrections officer would make the plaintiff's life "hell" was too vague to amount to an adverse action), cert. denied, 139 S. Ct. 268 (2018); see also Snelling v. Gregory, No. 1:17-CV-P41, 2017 WL 2602591, at *3 (W.D. Ky. June 14, 2017) (collecting cases for the proposition that vague threats of unspecified harm generally do not constitute adverse actions). In summary, Plaintiff has not demonstrated a substantial likelihood of success on the merits of his retaliation claims because he fails to identify the dates on which specific retaliatory actions occurred and the specific Defendants involved.

Plaintiff maintains that irreparable harm exists because "[r]etaliation chills protected activity." (Doc. No. 16-2 at 4-5). True, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976); Obama for Am. v. Husted, 697 F.3d 423, 436 (6th Cir. 2012) ("When constitutional rights

4

are threatened or impaired, irreparable injury is presumed."). Nevertheless, "a finding that there is simply no likelihood of success on the merits is usually fatal." Gonzales v. National Bd. of Med. Exam'rs, 225 F.3d 620, 625 (6th Cir. 2000). Plaintiff's claims of irreparable injury are based solely on the alleged violations of his constitutional rights but, as discussed above, Plaintiff has not carried his burden of demonstrating such violations at this time.

The Court declines to examine the remaining two factors—substantial harm to others and public interest. See Blount Pride, Inc. v. Desmond, 690 F. Supp.3d 796, 802 (E.D. Tenn. 2023) (when the court is able to determine the propriety of a temporary restraining order by relying on fewer than all four factors, it may do so); Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007) ("The district judge 'is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue.'" (quotation omitted)); Mascio v. Pub. Emps. Ret. Sys. of Ohio, 160 F.3d 310, 315 (6th Cir. 1998) (affirming the district court's issuance of a preliminary injunction based on the district court's conclusion that the plaintiff showed a likelihood of success on the merits). Plaintiff is not entitled to a TRO or preliminary injunction motion with respect to his claims of retaliation.

B. ACCESS TO COURT CLAIMS

The law is well settled that a prisoner has a First Amendment right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821-23 (1977). The right of access to the courts requires prison officials to ensure that inmates have access to the courts that is "adequate, effective and meaningful." Id. at 822. To ensure the meaningful exercise of this right, prison officials are under an affirmative obligation to provide inmates with access to an adequate law library, Walker v. Mintzes, 771 F.2d 920, 931 (6th Cir. 1985), or some alternative form of legal assistance, Procunier

v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989). What constitutes meaningful access varies with the circumstances, and prison officials are accorded discretion in determining how that right is to be administered. Bounds, 430 U.S. at 830-31. It is not enough for a plaintiff simply to claim that he was denied access to the courts, or that he did not have access to an adequate law library or to some alternate form of legal assistance. Where an incarcerated individual alleges that jail or prison staff interfered with his right to access the courts, he must allege "actual injury" in the form of prejudice to a non-frivolous lawsuit or potential lawsuit. Hadix v. Johnson, 182 F.3d 400, 405 (6th Cir. 1999); Jackson v. City of Cleveland, 64 F.4th 736, 746 (6th Cir. 2023) ("We have identified having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline as some examples of actual prejudice to pending or completed litigation." (quotation marks omitted)).

Here, Plaintiff alleges that he has been denied access to the prison law library, blocked from sending and receiving legal mail, prevented from preparing filings for "this Court", and "obstructed from preparing for the April 30 hearing." (Doc. No. 16-2 at 3). The docket in this case belies some of Plaintiff's assertions, however; it reflects that Plaintiff has prepared multiple legal filings (including at least six emergency motions) which have been received and responded to by this Court. Plaintiff's allegations that he has been prevented from sending and receiving legal mail in relation to his state-court case lack sufficient detail to justify the award of extraordinary relief. Further, Plaintiff's allegations of obstruction do not allege an "actual injury." In particular, he does not allege that he missed a court deadline or that his pending litigation in state court was otherwise prejudiced by the lack of law library time or delays in mail service. Thus, Plaintiff's allegations do not demonstrate a substantial likelihood of success on the merits of his access to court claims.

As with Plaintiff's retaliation claims, the Court need not consider the other factors in determining whether the grant of emergency relief is warranted with respect to Plaintiff's access to court claims. It is not.

C. DUE PROCESS CLAIMS

Plaintiff's due process claims are based on "actions demonstrat[ing] deliberate attempts to create false disciplinary exposure." (Doc. No. 16-2 at 4). Liberally construing Plaintiff's allegations, he alleges that Officer Tarnowski falsely accused Plaintiff of operating a Facebook account and intentionally provoked Plaintiff, intending to bait Plaintiff into committing a disciplinary violation.

The filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable under Section 1983. See Riley v. Church, Nos. 95-1192, 95-1193, 1996 WL 145846 (6th Cir. Mar. 29, 1996). Additionally, Plaintiff's allegation that he was provoked by Officer Tarnowski does not state a constitutional due process violation as Plaintiff's response to an officer's actions—provocative or not—is within Plaintiff's control.

Plaintiff is unable to demonstrate a substantial likelihood of success on the merits and, like with his other claims thus far, the Court need not consider the other factors in determining whether the grant of emergency relief is warranted. Plaintiff is not entitled to a TRO or preliminary injunction with respect to his due process claims.

D. "SAFETY VIOLATION" CLAIMS

Plaintiff alleges that "Officer Tarnowski's attempt to provoke a physical altercation—followed by Captain Mayes' warning that she was 'trying to get [Plaintiff] f*ed off'—shows deliberate indifference to Plaintiff's safety." (Doc. No. 16-2 at 4). This allegation is the basis of his "safety violation" claims under the Eighth Amendment.

7

Under the Eighth Amendment, prison officials have a duty to take reasonable measures to protect inmates' safety. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-33 (1994). Liability attaches to an officer's failure to protect an inmate only where the inmate demonstrates that he was "incarcerated under conditions posing a substantial risk of serious harm" and that the prison officials acted with deliberate indifference to the inmate's safety. <u>Id.</u> at 834. Here, Plaintiff has not alleged that Officer Tarnowski subjectively knew of an excessive risk of harm to Plaintiff's health or safety and disregarded that risk. Plaintiff does not allege that he suffered any harm because of Officer Tarnowski's actions.

To the extent Plaintiff complains that Officer Tarnowski "provoked"[1] Plaintiff, he also fails to state an Eighth Amendment claim. Verbal comments, even if harassing and abusive, do not violate the Eighth Amendment no matter how "shameful and utterly unprofessional." <u>Johnson v. Unknown Dellatifa</u>, 357 F.3d 539, 545-46 (6th Cir. 2004) (affirming dismissal for failure to state a claim where plaintiff's allegations included continuous insulting remarks by guard); <u>see also</u> <u>Morrison v. Greenwald</u>, No. 3:09-CV-009, 2010 WL 1253962, at *9 (S.D. Ohio Feb. 24, 2010), <u>report and recommendation adopted</u>, 2010 WL 1253958 (S.D. Ohio Mar. 23, 2010) ("The Constitution does not protect inmates (or anyone else) from gross insults by public officials, including prison guards."). Even a guard's verbal threat of assault does not violate a prisoner's constitutional rights. <u>Miller v. Wertanen</u>, 109 F. App'x 64, 65 (6th Cir. 2004). Just as the Constitution "does not mandate comfortable prisons," <u>Wilson</u>, 501 U.S. at 298, it does not mandate polite prison guards or officials. "Derogatory or abusive language and conduct do not give rise to a claim under § 1983." <u>Meadows v. Gibson</u>, 855 F. Supp. 223, 225 (W.D. Tenn. 1994) (citing <u>Paul v. Davis</u>, 424 U.S. 693 (1976)).

---

[1] Plaintiff does not explain how the officer "provoked" him.

Plaintiff has not demonstrated that he is entitled to a TRO or preliminary injunction with respect to this non-viable claim.

E. SUMMARY

Plaintiff has not shown that the circumstances clearly demand the extraordinary remedy of a TRO or preliminary injunction. Accordingly, the Court will deny Plaintiff's Motions for a TRO and preliminary injunction (Doc. Nos. 16 and 17) without prejudice.

## II. SCREENING OF THE AMENDED COMPLAINT

The Amended Complaint (Doc. No. 12) is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

A. PLRA SCREENING STANDARD

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," id. § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). Id. § 1915A(b).

The court must construe a pro se complaint liberally, United States v. Smotherman, 838 F.3d 736, 739 (6th Cir. 2016) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. See Thomas v. Eby, 481 F.3d 434, 437 (6th Cir. 2007) (citing Denton v. Hernandez, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 520121 (1972); Jourdan v. Jabe, 951 F.2d 108, 110

9

(6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." <u>McDonald v. Hall</u>, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

B. <u>SECTION 1983 STANDARD</u>

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. <u>Dominguez v. Corr. Med. Servs.</u>, 555 F.3d 543, 549 (6th Cir. 2009) (quoting <u>Sigley v. City of Panama Heights</u>, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

C. <u>ALLEGED FACTS</u>

The allegations of the Amended Complaint are assumed true for purposes of the initial screening required by the PLRA.

Beginning in 2023 and continuing through 2025, Plaintiff made repeated requests to access SCCF's law library and to place legal calls needed to meet litigation deadlines. "Staff" frequently refused or delayed entry and kept doors locked during posted hours. (Doc. No. 12 at 3). "SCCF personnel" restricted legal calls from Program/Education areas, "which hindered [Plaintiff's] ability to communicate with courts or counsel." (<u>Id.</u>)

In October and November of 2023, Plaintiff's legal mail was mishandled. In 2025, an emergency grievance concerning an assault and denial of access filed by Plaintiff "vanished." (<u>Id.</u> at 5).

On or about October 9, 2025, Plaintiff was denied entry to the law library. Plaintiff "requested chain of command review" and "staff" responded by "slamming a door on Plaintiff's

10

leg/back." (Id. at 4). Plaintiff suffered pain and impaired mobility as a result. "Staff" failed to take reasonable measures to protect him while he pursued legal access. (Id. at 10).

Defendants subsequently issued retaliatory and unsupported disciplinary citations against Plaintiff. These disciplinary write-ups immediately followed Plaintiff's legal-access attempts or protected activity. The charges resulted in penalties, restrictions, and stigmatizing records "that hinder Plaintiff's ability to litigate effectively and safely navigate the prison environment while continuing his legal work." (Id. at 8).

Plaintiff was not provided with adequate notice of his disciplinary hearing proceedings, he was restricted in witness presentation, the adjudication was partial, and the findings were not supported by reliable evidence. The disciplinary proceeding resulted in "liberty/property deprivations such as segregation, loss of credits, or privileges." (Id. at 9).

Plaintiff's ability to litigate a writ of error coram nobis has been undermined by Defendants' actions.

Plaintiff sought "program work (including chaplain clerk and inmate advisor roles) and sought removal of an STG designation as part of rehabilitation and religious service." (Id. at 5). He was denied equal access to these programs and observed disparities in program access. He believes that white prisoners were often permitted certain roles, with rare exceptions.

Plaintiff filed grievances alleging discrimination based on race and faith. Those investigations were incomplete or perfunctory, with determinations issued without meaningful inquiry.

D. ANALYSIS

In considering Plaintiff's most recent TRO and preliminary injunction motions, the Court already has determined that some of Plaintiff's claims fail to state Section 1983 claims upon which

11

relief can be granted. Those claims are Plaintiff's First Amendment due process claims based on Officer Tarnowski's alleged provocation and Plaintiff's "Safety Violation" claims. The Court need not repeat that analysis here. Those claims will be dismissed.

Even though Plaintiff failed to demonstrate a strong likelihood of success on the merits of his retaliation claims in the context of a motion for emergency relief, his allegations could state colorable claims under Section 1983. His retaliation claims may be viable if Plaintiff identified the individuals who allegedly committed the retaliatory acts and provided additional details regarding their conduct, including the dates they committed the acts. Given Plaintiff's pro se status and the seriousness of Plaintiff's allegations, the Court finds that it would be appropriate to permit Plaintiff to amend his complaint, if he so desires, to name those individuals and provide more details about his retaliation claims against them. See LaFountain v. Harry, 716 F.3d 944, 2013 WL 2221569 (6th Cir. May 22, 2013) (overruling McGore v. Wrigglesworth, 114 F.3d 601 (6th Cir. 1997), to the extent that McGore held that, when the PLRA required dismissal of a prisoner's claim, a district court could not grant leave to amend; vacating and remanding the district court's dismissal of some claims to determine whether to allow LaFountain to amend his complaint which was dismissed pursuant to the PLRA screening).

With respect to Plaintiff's access to court claims, Plaintiff provides more allegations in his Amended Complaint than he did in his TRO and preliminary injunction motions. Thus, the Court will screen those more fully developed claims now.

1. Access to court claims

The Amended Complaint alleges that, between 2023 and 2025, Plaintiff was denied access to the law library and was prevented from making legal calls and, as a result, was unable to "meet court deadlines critical to the advancement of his claims." (Doc. No. 12 at 7). These allegations

12

Case 3:26-cv-00424    Document 5    Filed 04/09/26    Page 12 of 23 PageID #: 34

come closer to alleging an actual injury from a Defendant's conduct, which is required to state a colorable access to court claim under the First Amendment. However, like with Plaintiff's retaliation claims, Plaintiff has not identified which Defendant or Defendants denied him access to the law library or to making legal calls and when, specifically, those denials occurred.

The limitations period for Section 1983 actions arising in Tennessee is the one-year limitations provisions found in Tennessee Code Annotated § 28-3-104(a). Porter v. Brown, 289 F. App'x 114, 116 (6th Cir. 2008). Plaintiff filed his Complaint on February 5, 2026. (See Doc. No. 1 at 14)[2]. Therefore, any allegations of conduct occurring prior to February 5, 2024 cannot be considered by the Court.

The Court finds that it is appropriate to permit Plaintiff to amend his complaint, if he so desires, to name the individuals who denied him access to the law library and prevented him from making legal telephone calls, when that happened (if after February 5, 2024), and details regarding what court deadline he missed as a result.

The Amended Complaint alleges additional claims not yet addressed by the Court: procedural due process, equal protection, excessive force, prison policy violations, and Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, et seq., claims.

---

[2] Under the "prison mailbox rule" of Houston v. Lack, 487 U.S. 266, 270 (1988), and the Sixth Circuit's subsequent extension of that rule in Richard v. Ray, 290 F.3d 810, 812 (6th Cir. 2002) and Scott v. Evans, 116 F. App'x 699, 701 (6th Cir. 2004), a prisoner's legal mail is considered "filed" when he deposits his mail in the prison mail system to be forwarded to the Clerk of Court. Pursuant to this authority, the Court finds that Plaintiff filed his Complaint on February 5, 2026, the date he indicated that he placed the Complaint into the prison mail system (Doc. No. 1 at 14), even though the Clerk of Court received and docketed the Complaint on February 10, 2026. The date on which Plaintiff filed his Complaint (not Amended Complaint) is the appropriate date to use for statute of limitations calculations because the claims brought in the Amended Complaint relate back to those brought in the Complaint. See Fed. R. Civ. P. 15(c).

13

The Court must screen those claims pursuant to the PLRA. However, two of the claims are misjoined, as the Court discusses below.

2. Procedural Due Process claims

The Amended Complaint alleges that Plaintiff was not provided with adequate notice of his disciplinary hearing proceedings, he was restricted in witness presentation, the adjudication of his hearing was partial, and the findings were not supported by reliable evidence. Further, the Amended Complaint alleges that the disciplinary proceeding results resulted in "liberty/property deprivations such as segregation, loss of credits, or privileges." (Doc. No. 12 at 9).

First, to the extent Plaintiff contends that one or more of the charges against him were unfounded, the filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable under Section 1983. *See Person v. Campbell*, No. 98-5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999).

Second, the disciplinary infractions about which Plaintiff complains are not the equivalent of a state or federal criminal charge against the plaintiff. "The constitutional adequacy of these [prison disciplinary] proceedings is not to be measured by the requirements of a criminal prosecution, for the full panoply of procedural due process rights do not apply to the administration of prison discipline." Brooks v. Westbrooks, No. 3:17-cv-00686, 2017 WL 3868275, at *3 (M.D. Tenn. Sept. 5, 2017) (quoting Crafton v. Luttrell, 378 F. Supp. 521, 526 (M.D. Tenn. 1973) (citations omitted)).

Third, "a claim for monetary and equitable relief complaining only of procedural defects in a prison disciplinary hearing which, if established, would imply invalidity of the punishment imposed, is not cognizable under Section 1983." Upshaw v. Jones, No. 14-2534-JDT-tmp, 2015 WL 348626, at *3 (W.D. Tenn. Jan. 26, 2015) (citing Edwards v. Balisok, 520 U.S. 641, 648-49

14

(1997)). Indeed, when a prisoner seeks to challenge the validity or duration of his confinement, his sole remedy is a petition for a writ of habeas corpus. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). Here, the Amended Complaint alleges that Plaintiff lost earned credits, although it is unclear whether the loss of those credits affected Plaintiff's release date. If so, Plaintiff's claim would clearly be barred. See Heck v. Humphrey, 512 U.S. 477, 481 (1994) (citing Preiser, 411 U.S. 475, 488-90) (a Section 1983 claim challenging confinement must be dismissed even where a plaintiff seeks only injunctive or monetary relief).

Finally, inmates do not have a liberty interest in a particular security classification or in freedom from segregation. Miller v. Campbell, 108 F. Supp.2d 960, 963 (W.D. Tenn. 2000) (citations omitted). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. See Meachum v. Fano, 427 U.S. 215, 225 (1976). Confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." Hewitt v. Helms, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." Joseph v. Curtin, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." Harden–Bey v. Rutter, 524 F.3d 789, 794 (6th Cir. 2008). Plaintiff has provided no details as to the circumstances of his segregation.

These allegations do not state colorable procedural due process claims and therefore will be dismissed.

### 3. Excessive Force claims

The Amended Complaint alleges that, on October 9, 2025, when Plaintiff requested a "chain of command review" of why he was denied access to the law library, "staff" aggressively

15

slammed a door on Plaintiff's leg and back, resulting in lasting injuries to Plaintiff's leg. (Doc. No. 12 at 4).

Under the Eighth Amendment, which applies to convicted prisoners such as Plaintiff, an officer's conduct will be found to amount to cruel and unusual punishment "when the[] 'offending conduct reflects an unnecessary and wanton infliction of pain.'" Cordell v. McKinney, 759 F.3d 573, 580 (6th Cir. 2014) (quoting Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011)). In examining an excessive force claim under the Eighth Amendment, the constitutional analysis has both a subjective and an objective component, requiring a court to determine "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," and whether "the pain inflicted was sufficiently serious." Cordell, 759 F.3d at 580 (internal quotation marks and citations omitted) (alteration added). The Sixth Circuit has acknowledged that "'[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" Id. (quoting Combs v. Wilkinson, 315 F.3d 548, 556 (6th Cir. 2002)) (alteration in original).

In determining whether the force used was applied in a good faith effort to restore discipline or rather inflicted for a malicious purpose, it is "proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)). "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." Cordell, 759 F.3d at 581 (citing Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)). "'When prison officials maliciously and sadistically use force to cause harm, contemporary standards of

16

decency always are violated . . . [w]hether or not significant injury is evident.'" <u>Cordell</u>, 759 F.3d at 581 (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992)) (alteration in original). A significant physical injury is not required to establish the objective component of an Eighth Amendment claim. <u>Wilkins</u>, 559 U.S. at 1178-79 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). In the end, a determination of what constitutes "unnecessary and unwanton infliction of pain," is "contextual and responsive to contemporary standards of decency." <u>Hudson</u>, 503 U.S. at 8.

Based on the allegations of the Amended Complaint, the Court finds that Plaintiff could state a colorable Eighth Amendment claim under Section 1983 based on the alleged use of excessive force against Plaintiff on October 9, 2025. This is because he may be able to identify the staff member who allegedly slammed a door on Plaintiff's leg and back, causing Plaintiff lasting injuries. Plaintiff will be permitted to amend his Amended Complaint to identify this individual.

4. <u>Prison Policy Violation claims</u>

The Amended Complaint alleges that "SCCF personnel" failed to follow various Tennessee Department of Correction ("TDOC") policies. (Doc. No. 12 at 6).

It is well settled that alleged violations of TDOC policies are not actionable under Section 1983." <u>Boyd v. Staggs</u>, No. 1:19-cv-00007, 2019 WL 295087, at *2 (M.D. Tenn. Jan. 23, 2019) (citing <u>Rimmer-Bey v. Brown</u>, 62 F.3d 789, 790-91 (6th Cir. 1995)). Further, "no liberty interest subject to due process is created by TDOC policies and regulations." <u>Taylor v. Dukes</u>, 25 F. App'x 423, 424 (6th Cir. 2002) (citing <u>Rimmer-Bey</u>). Thus, Plaintiff cannot proceed under Section 1983 based on any Defendants' failure to follow TDOC policies

17

5. Equal Protection and RLUIPA claims

The Amended Complaint also alleges equal protection and RLUIPA claims. Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18 . . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1655 (3d ed. 2001). Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." Proctor v. Applegate, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009) (internal quotation marks omitted); Smith v. Lavender, No. 2:22-CV-1875, 2022 WL 4121929, at *6 (S.D. Ohio, Sept. 9, 2022) (severing unrelated claims

18

a prisoner filed in the same complaint against different defendants); White v. Newcomb, No. 2:21-cv-249, 2022 WL 2763305, at *4-5 (W.D. Mich. July 15, 2022) (providing that a plaintiff cannot join claims against multiple defendants in one lawsuit "'unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact'" (quoting Proctor, 661 F. Supp. 2d 743, 778 and collecting cases standing for the proposition that prisoners cannot join unrelated claims against different defendants in a single lawsuit); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) ("A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.") (citations omitted). To allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions. See Riley v. Kurtz, 361 F.3d 906, 917 (6th Cir. 2004); see Shephard v. Edwards, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision'").

When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." Nali v. Mich. Dep't of Corr., No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007). Applying these factors here, the Amended Complaint alleges multiple claims against multiple Defendants. Most of the claims are transactionally related; they arise out of, or are

adjacent to, Plaintiff's allegations of retaliatory conduct by various individuals after Plaintiff filed lawsuits and grievances. However, Plaintiff's equal protection and RLUIPA claims are unrelated to his allegations of retaliation for engaging in protected conduct. Instead, they are based on Plaintiff's concerns regarding the role of race and religion in his prison life. Those claims are misjoined.

Having determined that Plaintiff has improperly joined some claims to this action, the Court must consider an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. See Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 572-73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (quoting Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832 (1989)). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" White, 2021 WL 3855589, at *7 (citation and internal quotation marks omitted). As a sister court has pointed out,

> At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." Id. (citing Strandlund v. Hawley, 532 F.3d 741, 745 (8th Cir. 2008) (quoting Elmore v. Henderson, 227 F.3d 1009, 1012 (7th Cir. 2000)); see also DirecTV, 467 F.3d at 845). Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. Strandlund, 532 F.3d at 746; DirecTV, 467 F.3d at 846-47.

White, 2021 WL 3855589, at *7.

Here, Plaintiff's claims are brought under Section 1983. If the Court severed the misjoined claims and dismissed them without prejudice, the claims, if brought in a newly-filed action, could[3] be subject to dismissal on statute of limitations grounds. Such a result would not be "just". Thus, the Court will exercise its discretion under Federal Rule of Civil Procedure 21 to order severance that protects Plaintiff's rights to pursue the claims he raised in his Amended Complaint.[4]

### III. CONCLUSION

Plaintiff has not shown that the circumstances clearly demand the extraordinary remedy of a TRO or preliminary injunction. Accordingly, Plaintiff's motions (Doc. Nos. 16 and 17) are **DENIED WITHOUT PREJUDICE**.

The Amended Complaint contains misjoined claims: equal protection and RLUIPA claims against all named Defendants to the instant action.[5] The misjoined claims are hereby severed into a new case, and the Clerk is **DIRECTED** to file the Amended Complaint (Doc. No. 12) dated as filed with the date of the original complaint (February 5, 2026) and this Memorandum Opinion and Order in the docket of the new case. Plaintiff will be responsible for paying the full civil filing fee for the new case or obtaining pauper status therein.

If Plaintiff does not wish to pursue the severed case, he may choose to file a notice of voluntary dismissal, and Plaintiff will not be responsible for the filing fee for that voluntarily dismissed case. Voluntary dismissal of the severed case will not count as a strike under the Prison

---

[3] The Amended Complaint alleges only that the events giving rise to his equal protection and RLUIPA claims occurred between 2023 and 2025. Thus, it is unclear whether the claims would be barred by the one-year statute of limitations, were those claims filed in a new complaint now.

[4] The Court makes no representations as to the viability of such claims.

[5] Because it is unclear from the Amended Complaint which named Defendants are responsible for the conduct giving rise to Plaintiff's equal protection and RLUIPA claims, the Court finds it appropriate to list all individuals named as Defendants in the instant case as Defendants in the new case.

Litigation Reform Act. Plaintiff, however, remains responsible for the filing fee in the instant case regardless of whether he elects to pursue the other case.

The Court has conducted the required PLRA screening of the properly joined claims and Defendants in the instant case. Plaintiff's First Amendment due process claims based on Officer Tarnowski's alleged provocation, "Safety Violation" claims brought under the Eighth Amendment, procedural due process claims, and prison policy violations claims fail to state claims under Section 1983 upon which relief can be granted. Those claims are therefore **DISMISSED WITH PREJUDICE**.

Plaintiff's retaliation, access to court, and excessive force claims under Section 1983 are subject to dismissal at this time as Plaintiff has failed to provide sufficient information regarding those claims. See supra at 11-13, 15-17. However, Plaintiff may file a Second Amended Complaint no later than 30 days after the date of entry of this Memorandum Opinion and Order in which he provides more information regarding his retaliation, access to court, and excessive force claims under Section 1983, as detailed by the Court herein. See id. Plaintiff should note that an amended complaint should not incorporate a prior complaint by reference. In other words, an amended complaint will replace all prior complaints, and Plaintiff must set forth all allegations regarding the claims he chooses to pursue (retaliation, access to court, and/or excessive force) in his newest complaint.

If Plaintiff submits a timely Second Amended Complaint alleging retaliation, access to court, and/or excessive force claims under Section 1983, the Court will screen the Second Amended Complaint pursuant to the PLRA upon receipt. If not, at the expiration of the 30-day period, this case will be dismissed.

22

Plaintiff is reminded that failure to promptly inform the Court of any change in address may result in dismissal of the case without further Order. M.D. Tenn. L.R. 41.01(b).

Resources for pro se litigants are available free of charge on the Court's website as well as by request to the Clerk's Office so long as the privilege is not abused.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE

23